IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 14-00374 LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JULIAN KEALAKEKUA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER DENYING MOTION UNDER 28 U.S.C. § 2255 TO VACATE,
SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL
<u>CUSTODY AND DENYING A CERTIFICATE OF APPEALABILITY</u>**

Before the Court is pro se Defendant/Petitioner

Julian Kealakekua's ("Kealakekua" or "Defendant") Motion under 28

U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a

Person in Federal Custody ("§ 2255 Motion"), filed on December 5,

2016. [Dkt. no. 96.] Plaintiff/Respondent the United States of

America ("the Government") filed its response to the § 2255

Motion ("Response") on April 3, 2017, and Kealakekua filed his

reply on May 1, 2017. [Dkt. nos. 113, 114.] Kealakekua's § 2255

Motion is hereby denied, and a certificate of appealability is

also denied, for the reasons set forth below.

<u>BACKGROUND</u>

On April 2, 2014, Kealakekua was indicted for nineteen

counts of bank fraud, in violation of 18 U.S.C. § 1344 and 18

U.S.C. § 2.[1]  [Dkt. no. 1.]  The Indictment alleged Kealakekua created and operated various companies and created websites which made it appear the companies were established and profitable.  He recruited individuals to be investors or employees and induced them to apply for bank loans.  The proceeds were to be turned over to him for business operations, but Kealakekua used the proceeds for his personal purposes.  [Id. at ¶¶ 2-3.]

Kealakekua initially entered a plea of not guilty, [Minutes, filed 7/10/14 (dkt. no. 10), at 1,] but, on September 30, 2015, he withdrew his plea and entered a plea of guilty to Counts 11 and 17, pursuant to a plea agreement.  [Dkt. nos. 55 (Minutes), 56 (Memorandum of Plea Agreement ("Plea Agreement")).]  In the Plea Agreement, Kealakekua acknowledged that, by pleading guilty, he was waiving certain rights and his attorney had explained those rights and the consequences of the waiver to him.  [Plea Agreement at ¶¶ 16-17.]  At all times relevant to the § 2255 Motion, Thomas Otake, Esq., represented Kealakekua.[2]  [CJA 20 form, filed 5/4/15 (dkt. no. 41).]

Kealakekua's sentencing hearing was held on February 29, 2016.  [Minutes, filed 2/29/16 (dkt. no. 67).]  The

---

[1] Kealakekua was indicted under the name Clarence Hobbs, who was "also known as Julian McClinton, Julian Kealakekua and Julian Brandt."  [Indictment at ¶ 1.]

[2] The § 2255 Motion refers to Mr. Otake as Kealakekua's "trial counsel."  [Mem. in Supp. of § 2255 Motion at 1.]

Plea Agreement was accepted and the factual findings in the presentence report were adopted. ["Presentence Investigation Report (2)" ("PSR"), filed 2/17/16 (dkt. no. 63).] The PSR found that Kealakekua's base offense level was seven, with: a sixteen-level increase because Kealakekua was responsible for total loss of $1,531,430.81; a two-level increase because the offense involved ten or more victims; and another two-level increase because the offense involved sophisticated means, conducted or caused by Kealakekua. His adjusted offense level was therefore twenty-seven. [Id. at ¶¶ 104-27.] After a total decrease of three levels for acceptance of responsibility, Kealakekua's total offense level was twenty-four. [Id. at ¶¶ 113-15.] His criminal history category was V. [Id. at ¶ 126.] His imprisonment range under the United States Sentencing Guidelines ("U.S.S.G." or "the Guidelines") was therefore 92 to 115 months, and his range for supervised release was 2 to 5 years. [Id. at ¶¶ 162, 166.] The PSR noted that a total of $291,615.31 in restitution was due to six individual victims and four banks. [Id. at ¶ 174.]

Kealakekua was sentenced to 84 months of imprisonment, and 5 years of supervised release, and he was ordered to pay $291,615.31 in restitution, and $200 in special assessments. This Court granted the Government's oral motion to dismiss Counts 1-10, 12-16, 18, and 19. [Minutes, filed 2/29/16 (dkt. no. 67).] The Judgment in a Criminal Case was filed on March 1,

3

2016. [Dkt. no. 68.]

Kealakekua filed his Notice of Appeal on March 4, 2016.
[Dkt. no. 70.] Lars Isaacson, Esq., represented Kealakekua on
appeal. [Dkt. nos. 73 (order granting Mr. Otake's motion to
withdraw); 74 (order appointing Mr. Isaacson).] According to the
§ 2255 Motion, Kealakekua argued on appeal that his criminal
history score was improperly calculated. [§ 2255 Motion at 3.]
On July 20, 2016, the Ninth Circuit granted the Government's
motion to dismiss the appeal in light of the valid appeal waiver.
[Dkt. no. 93.] The Ninth Circuit's Mandate was issued on
October 21, 2016. [Dkt. no. 95.]

In the § 2255 Motion, Kealakekua argues that Mr. Otake
rendered ineffective assistance by: 1) failing to argue that the
clear and convincing evidence standard applied at sentencing to
the losses that were not the subject of the charged offenses;
2) failing to investigate the accuracy of the criminal history
section of the PSR; and 3) failing to provide Kealakekua with a
copy of the Plea Agreement and failing to advise him regarding
the agreement. The Government responds that the § 2255 Motion
fails to establish ineffective assistance because Mr. Otake:
presented a vigorous challenge to the amount of loss, and the
clear and convincing standard was met; challenged Kealakekua's
criminal history score; and carefully explained the Plea
Agreement to Kealakekua.

**<u>STANDARD</u>**

Section 2255(a) states:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

This district court has described the standards applicable to § 2255 motions as follows:

A court may dismiss a § 2255 motion if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." R. 4(b), Rules Governing Section 2255 Proceedings. A court need not hold an evidentiary hearing if the allegations are "palpably incredible [or] patently frivolous," <u>Blackledge v. Allison</u>, 431 U.S. 63, 76 (1977) (internal quotation marks and citation omitted), or if the issues can be conclusively decided on the basis of the evidence in the record. <u>See</u> <u>United States v. Mejia-Mesa</u>, 153 F.3d 925, 929 (9th Cir. 1998) (noting that a "district court has discretion to deny an evidentiary hearing on a § 2255 claim where the files and records conclusively show that the movant is not entitled to relief"). Conclusory statements in a § 2255 motion are insufficient to require a hearing. <u>United States v. Johnson</u>, 988 F.2d 941, 945 (9th Cir. 1993). A petitioner must "allege specific facts which, if true, would entitle him to relief." <u>United States v. Rodrigues</u>, 347 F.3d 818, 824 (9th Cir. 2003) (internal quotation marks and citation omitted).

<u>United States v. Sherman</u>, Cr. No. 16-00169 JMS, 2017 WL 4560150, at *1 (D. Hawai`i Oct. 12, 2017) (alteration in <u>Sherman</u>).

5

The issues raised in Kealakekua's § 2255 Motion are legal issues that "can be conclusively decided on the basis of the evidence in the record," including the record of the underlying proceedings. See Mejia-Mesa, 153 F.3d at 929. An evidentiary hearing is therefore unnecessary in this case.

## DISCUSSION

This district court has stated:

> To prevail on an ineffective assistance claim, a petitioner must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). That is, the petitioner must also show that the deficiency was prejudicial. Id. at 692.

> Counsel "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. But, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. See id. at 697. In other words, any deficiency that does not result in prejudice necessarily fails.

United States v. Chaves, Cr. No. 14-00579 JMS (03), 2016 WL 5660327, at *4 (D. Hawai`i Sept. 28, 2016). As to the reasonableness of representation prong, a court must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. Kealakekua

6

bears the burden of proof as to both prongs of the <u>Strickland</u>

analysis.  <u>See</u> <u>Turk v. White</u>, 116 F.3d 1264, 1265 (9th Cir.

1997).

## I.    <u>Representation Regarding the Plea Agreement</u>

This Court turns first to Kealakekua's argument that

Mr. Otake rendered ineffective assistance during the period prior

to the entry of the guilty plea.   The <u>Strickland</u> analysis is

applicable to those claims.  <u>See</u> <u>Hedlund v. Ryan</u>, 854 F.3d 577,

576 (9th Cir. 2017) (quoting <u>Hill v. Lockhart</u>, 474 U.S. 52, 57,

106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)).  Kealakekua "must show

that there is a reasonable probability that, but for counsel's

errors, he would not have pleaded guilty and would have insisted

on going to trial."  <u>See</u> <u>Hill</u>, 474 U.S. at 59.  Further, in the

plea context, the <u>Strickland</u> analysis "is based on 'counsel's

judgment and perspective when the plea was negotiated, offered

and entered,' not on a post-adjudication assessment of the case."

<u>Baldwin v. Muniz</u>, Case No. 14-cv-03271-JST(PR), 2016 WL 97454, at

*6 (N.D. Cal. Jan. 8, 2016) (quoting <u>Premo v. Moore</u>, 562 U.S.

115, 126 (2011)).  In <u>Premo</u>, the United States Supreme Court

stated:

> The art of negotiation is at least as nuanced as
> the art of trial advocacy, and it presents
> questions farther removed from immediate judicial
> supervision.   There are, moreover, special
> difficulties in evaluating the basis for counsel's
> judgment: An attorney often has insights borne of
> past dealings with the same prosecutor or court,
> and the record at the pretrial stage is never as

> full as it is after a trial. In determining how
> searching and exacting their review must be,
> habeas courts must respect their limited role in
> determining whether there was manifest deficiency
> in light of information then available to
> counsel. . . .

562 U.S. at 125. The Ninth Circuit has stated that "[t]hough a mere inaccurate prediction, standing alone, would not constitute ineffective assistance, the gross mischaracterization of the likely outcome . . . , combined with the erroneous advice on the possible effects of going to trial, falls below the level of competence required of defense attorneys." United States v. Manzo, 675 F.3d 1204, 1209-10 (9th Cir. 2012) (citation and quotation marks omitted).

Kealakekua contends that Mr. Otake rendered ineffective assistance because Mr. Otake failed to "thoroughly review and discuss the legal terms of" the Plea Agreement with him and failed to "ensure that defendant possessed a reasonable understanding of the law in relation to the facts that were written in" the Plea Agreement. [Mem. in Supp. of § 2255 Motion at 12.] In particular, Kealakekua asserts that Mr. Otake never provided him with a copy of the proposed Plea Agreement and, in reviewing the proposed agreement with Kealakekua, Mr. Otake never explained the language of 18 U.S.C. § 3742(a) to him. [Id. at 12-14.]

Kealakekua contends that Mr. Otake rendered ineffective assistance because Mr. Otake failed to "thoroughly review and discuss the legal terms of" the Plea Agreement with him and failed to "ensure that defendant possessed a reasonable understanding of the law in relation to the facts that were written in" the Plea Agreement. [Mem. in Supp. of § 2255 Motion at 12.] In particular, Kealakekua asserts that Mr. Otake never provided him with a copy of the proposed Plea Agreement and, in reviewing the proposed agreement with Kealakekua, Mr. Otake never explained the language of 18 U.S.C. § 3742(a) to him. [Id. at 12-14.]

The Ninth Circuit has already held that the waiver of Kealakekua's appeal rights in the Plea Agreement was valid.

8

[Dkt. no. 93 (citing United States v. Harris, 628 F.3d 1203, 1205 (9th Cir. 2011) (stating that an appeal waiver is enforceable if its language encompasses the right to appeal on the grounds raised and the waiver is knowingly and voluntarily made)).] Further, at Kealakekua's change of plea hearing, he stated, under oath, that: he had the opportunity to read the entire Plea Agreement and discuss it with Mr. Otake before he signed it; and he understood the terms of the Plea Agreement. [Trans. of 9/30/15 Hrg., filed 4/7/16 (dkt. no. 81), at 3, 5.] The Government's attorney – Assistant United States Attorney ("AUSA") Lawrence Tong – then summarized the major terms of the Plea Agreement, and Kealakekua confirmed that the Government's summary was what Kealakekua understood his agreement with the Government to be. Kealakekua also confirmed that he understood the specific terms that this Court reviewed with him, including his appeal waiver and the elements of his potential sentence. [Id. at 6-10.] When asked: "And are you fully satisfied with the legal representation that you received from [Mr. Otake] and his office?" Kealakekua responded, "I am." [Id. at 4.]

        In the § 2255 Motion, Kealakekua admits affirming his satisfaction with Mr. Otake's representation, but he states that "this affirmation was predicated on defendant's belief that trial counsel was forthright and honest in explaining the details of the agreement." [§ 2255 Motion at 14.] Kealakekua now claims

9

that Mr. Otake was not forthright and honest because Mr. Otake did not provide him with a copy of the Plea Agreement that he could keep, and Mr. Otake did not explain § 3742(a) to him. However, those are concerns that Kealakekua was aware of at the time of his change of plea hearing and could have raised during his colloquy with this Court and requested more time to consider his plea, but he did not.

Mr. Otake states his "practice has always been to provide [his] clients with copies of their plea agreements when they want it." [Response, Decl. of Thomas Otake ("Otake Decl.") at ¶ 14.] Although Mr. Otake does not have a specific recollection of doing so in this case, he "would assume that [he] would have." [Id.] Even assuming that Kealakekua is correct that Mr. Otake did not provide him with a copy of the Plea Agreement to keep, under the circumstances of this case, the failure to do so did not fall below an objective standard of reasonableness. It is undisputed that Mr. Otake met with Kealakekua at the Federal Detention Center prior to the change of plea hearing, and Kealakekua had the opportunity to review the Plea Agreement. [Mem. in Supp. of § 2255 Motion at 13 ("On September 19, 2015, trial counsel visited defendant and brought a copy of the plea memorandum. . . . [D]efendant proceeded to read through the agreement and notated [sic] changes he wanted the government to make pertaining to counts 11 and 17."); Otake Decl.

at ¶ 15 ("I most definitely sat with Mr. Kealakekua at the
Federal Detention Center, I believe on September 19, 2015, and
reviewed his plea agreement with him paragraph-by-paragraph,
line-by-line.").] Kealakekua suggested extensive changes, and
AUSA Tong ultimately "agree[d] to almost all the proposed
changes." [§ 2255 Motion, Exh. 10 (email dated 9/23/16 to
Kealakekua from Mr. Otake) at 1.]

        The Plea Agreement contains multiple citations to
§ 3742. [Plea Agreement at ¶¶ 13.a-c.] If, as Kealakekua
alleges, he believed Mr. Otake failed to sufficiently explain
§ 3742 to him, he could have raised this issue during the change
of plea hearing, but he did not do so. Kealakekua alleges that,
had he "known he would not be able to appeal based on the
language setforth [sic] in Title 18, U.S.C.S., Section 3742(a),
defendant would not have accepted the plea memorandum." [Mem. in
Supp. of § 2255 Motion at 18.] As previously noted, Kealakekua
confirmed in his colloquy with this Court that he understood the
waiver of his appellate rights, and the Ninth Circuit held that
Kealakekua's appeal waiver was knowingly and voluntarily made.

        Viewing the record as a whole, Kealakekua has not
established that Mr. Otake's alleged failure to provide
Kealakekua with a copy of the Plea Agreement and his alleged
failure to explain § 3742 to Kealakekua fell outside of what is
considered competent assistance for purposes of an ineffective

assistance of counsel claim.  Further, Kealakekua's claim that,

had Mr. Otake provided him with a copy of the Plea Agreement and

fully explained § 3742 to him, he would not have pled guilty is

palpably incredible in light of the record in this case.

Kealakekua fails to establish either that Mr. Otake rendered

constitutionally ineffective assistance regarding the Plea

Agreement or that Kealakekua was prejudiced by the allegedly

deficient representation.  Kealakekua's effective assistance of

counsel claim fails as to Mr. Otake's representation related to

the guilty plea.

## II.  Representation at Sentencing

The Strickland analysis also applies to § 2255 motions

alleging ineffective assistance related to sentencing.  See,

e.g., United States v. Carlsen, 441 F. App'x 531, 535 (9th Cir.

2011) (applying Strickland analysis to a claim that defense

counsel failed to advocate for the application of a relevant

provision of the United States Sentencing Guidelines).

### A.   Amount of Loss

In the § 2255 Motion, Kealakekua argues that his total

offense level was determined based on loss amount of

$1,531,430.81, which included losses from Counts 11 and 17, the

other counts that were dismissed, and other conduct.  He contends

that, other than the losses from Counts 11 and 17, the losses

could only be considered during sentencing if they were proven by

clear and convincing evidence.  Kealakekua alleges that Mr. Otake

rendered ineffective assistance by failing to argue that the

clear and convincing standard applied.  [Mem. in Supp. of § 2255

Motion at 2-4.]

       District courts generally use the
"preponderance of the evidence standard of proof
when finding facts at sentencing, such as the
amount of loss caused by a fraud." <u>United States
v. Treadwell</u>, 593 F.3d 990, 1000 (9th Cir. 2010).
The higher clear and convincing standard may
apply, however, "when a sentencing factor has an
extremely disproportionate effect on the sentence
relative to the offense of conviction." <u>United
States v. Mezas de Jesus</u>, 217 F.3d 638, 642 (9th
Cir. 2000) (citing <u>United States v. Restrepo</u>, 946
F.2d 654, 659 (9th Cir. 1991) (en banc)); <u>see also
Treadwell</u>, 593 F.3d at 1000.  Particularly "where
a severe sentencing enhancement is imposed on the
basis of uncharged or acquitted conduct, due
process may require clear and convincing evidence
of that conduct."  <u>Treadwell</u>, 593 F.3d at 1000.

       Our precedents "have not been a model of
clarity in deciding what analytical framework to
employ when determining whether a disproportionate
effect on sentencing may require the application
of a heightened standard of proof."  <u>United States
v. Berger</u>, 587 F.3d 1038, 1048 (9th Cir. 2009).
We have indicated that, "where the sentencing
enhancements are based on . . . the offense of
conviction," the preponderance of the evidence
standard is sufficient.  <u>Id.</u> (citing <u>United States
v. Harrison-Philpot</u>, 978 F.2d 1520, 1524 (9th Cir.
1992)) (internal quotation marks omitted).  We
have also held that "there is no bright-line rule
for the disproportionate impact test;" instead,
the court examines the "totality of the
circumstances" using six factors first articulated
in <u>United States v. Valensia</u>, 222 F.3d 1173 (9th
Cir. 2000) ("<u>Valensia</u> factors").[3]  <u>Berger</u>, 587

---

[3] <u>Valensia</u>, 222 F.3d 1173, was vacated and remanded "for
(continued...)

13

F.3d at 1048 (citing <u>United States v. Jordan</u>, 256
F.3d 922, 928 (9th Cir. 2001)) (internal quotation
marks omitted).

Under the <u>Valensia</u> totality of the
circumstances test, six factors, none of which is
dispositive, guide the determination of whether a
sentencing factor has a disproportionate impact on
the sentence:

(1) whether the enhanced sentence falls
within the maximum sentence for the crime
alleged in the indictment; (2) whether the
enhanced sentence negates the presumption of
innocence or the prosecution's burden of
proof for the crime alleged in the
indictment; (3) whether the facts offered in
support of the enhancement create new
offenses requiring separate punishment;
(4) whether the increase in sentence is based
on the extent of a conspiracy; (5) whether an
increase in the number of offense levels is
less than or equal to four; and (6) whether
the length of the enhanced sentence more than
doubles the length of the sentence authorized
by the initial sentencing guideline range in
a case where the defendant would otherwise
have received a relatively short sentence.

<u>Treadwell</u>, 593 F.3d at 1000.

<u>United States v. Hymas</u>, 780 F.3d 1285, 1289-90 (9th Cir. 2015)

(alteration in <u>Hymas</u>) (footnote omitted).

The $1,531,430.81 total loss in this case consisted of:

$490,175.05 for the scheme that was the subject of the indictment

in this case; $924,787.76 for a mortgage fraud scheme deemed

_____

[3](...continued)
further consideration in light of <u>Apprendi v. New Jersey</u>, 530
U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)." <u>Valensia
v. United States</u>, 532 U.S. 932 (2001). However, it did not
affect the totality of the circumstances analysis. <u>See, e.g.</u>,
<u>Berger</u>, 587 F.3d at 1048.

relevant conduct to the charged offenses; and $116,468.00 for a loan fraud scheme in Seattle that was also deemed relevant conduct. [PSR at ¶¶ 97-103.] Kealakekua argues that, if only the losses for Counts 11 and 17 were considered, his base offense level would only have been increased by 6 because the total loss from those offenses was $43,198.87. Instead, the $1,531,430.81 loss resulted in a 17-level increase. [Mem. in Supp. of § 2255 Motion at 2-3.] The Government concedes that "the clear and convincing standard probably applied" to losses from conduct other than the charged offenses. [Response at 14 n.6.]

The Government also concedes that Mr. Otake did not expressly argue that the clear and convincing standard should have been applied to the calculation of the amount of loss. [Id. at 13-14.] Kealakekua's argument is that, had Mr. Otake argued for the application of the clear and convincing standard, only the losses associated with Counts 11 and 17 would have been considered in determining the total amount of loss. However, based on the legal principles set forth above, the clear and convincing standard would not have applied to the conduct that was the basis for the dismissed counts. Thus, the crux of Kealakekua's argument is that the clear and convincing standard applied to the losses from the other conduct deemed relevant conduct for purposes of the amount of loss.

Mr. Otake did in fact argue that the $924,787.76 from the mortgage fraud scheme and the $116,468.00 from the Seattle loan fraud scheme should not be considered in the amount of loss as relevant conduct. Mr. Otake argued that Kealakekua should only be held responsible for a total loss of $172,476.05. [Objections to Proposed Presentence Investigation Report, filed 1/14/16 (dkt. no. 62), at 24-29.[4]]

In light of the lack of clarity in the case law regarding the clear and convincing standard of proof at sentencing, and the fact that Mr. Otake made an argument that, if it had been accepted, would have had the same effect as the argument Kealakekua now contends Mr. Otake should have made, Mr. Otake's failure to expressly argue that the clear and convincing standard applied did not fall "outside the wide range of professionally competent assistance." See Strickland 466 U.S. at 690.

Because Kealakekua has failed to establish the first prong of the Strickland test, this Court does not need to address the issue of whether Kealakekua's sentence would have been different if Mr. Otake had expressly argued that the clear and convincing standard applied. Kealakekua has failed to establish

---

[4] Mr. Otake also made similar arguments in Kealakekua's Sentencing Memorandum. [Filed 2/22/16 (dkt. no. 64), at 9-12.] He also reiterated this position at the sentencing hearing. [Trans. of 2/29/16 Sentencing Hrg. ("Sentencing Trans."), filed 4/22/16 (dkt. no. 83), at 32-33.]

16

that Mr. Otake rendered constitutionally ineffective assistance
during the sentencing process regarding the amount of loss.

**B.    <u>Criminal History Points</u>**

Kealakekua states he repeatedly told Mr. Otake the
facts presented in the PSR regarding his criminal history were
erroneous, resulting in an incorrect score.  Further, Mr. Otake
never provided him with an indication he followed up on
Kealakekua's concerns and investigated Kealakekua's criminal
history.  According to Kealakekua, without conducting such
investigation, Mr. Otake could not appropriately object to the
PSR's determination of the criminal history category.  [Mem. in
Supp. of § 2255 Motion at 4-5.]

According to the PSR, Kealakekua had six prior
convictions, three of which counted toward his criminal history
score.  [PSR at ¶¶ 118-23.]  Those three convictions were: a
September 21, 1989 conviction in Georgia for bank fraud in Case
No. CR89-213-01A; an April 18, 1991 conviction in Georgia for
forgery and other offenses in Case No. 91-B514-5; and a
October 25, 2000 conviction in Georgia for forgery and other
offenses in Case No. 93-1398-5.  Each of the three offenses
resulted in three criminal history points.  [<u>Id.</u> at ¶¶ 121-23.]
An additional two points were added because Kealakekua committed
the offenses in the instant case while he was under the
October 25, 2000 sentence.  Thus, Kealakekua's total criminal

history score was eleven.  [Id. at ¶¶ 125-26.]

        Kealakekua argues the three points for Case No. 93-
1398-5 should not have been included because the PSR states he
was released from prison the same day he was sentenced –
October 25, 2000, [Mem. in Supp. of § 2255 Motion at 6 (citing
PSR at ¶ 123),] and there is no evidence he actually served a
term of imprisonment in Case No. 93-1398-5, [id. at 8].
Kealakekua reasons that, if he never served a term of
imprisonment, he could not have served probation following the
term of imprisonment.  Thus, he could not have been on probation
for Case No. 93-1398-5 when he committed the instant offenses,
and the additional two criminal history points should not have
been assessed.  [Id.]  Kealakekua also states he does not
remember serving a term of imprisonment for Case No. 91-B514-5,
and he denies he had his probation revoked in that case on
October 25, 2000 for violation of a warrant.  [Id. at 8-9.]
Further, he contends there is no evidence to support the
Government's statement at sentencing that, according to the
probation officer, Kealakekua served more than thirteen months
imprisonment for Case. No. 91-B514-5, [id. at 9 (citing
Sentencing Trans. at 42),] and he asserts that his sentence for
that case should not have counted because it was imposed more
than fifteen years before the instant offense, [id. at 10].
According to Kealakekua, without the erroneous inclusion of these

18

prior offenses and the erroneous assessment for commission of the instant offense while on probation, his criminal history score would have been four, resulting in a criminal history category of III. [Id.]

According to Mr. Otake's declaration, Kealakekua did inform Mr. Otake of his concerns that his criminal history score was too high, but "[h]is explanation as to why it should have been lower made no sense." [Otake Decl. at ¶ 26.] In spite of that fact, Mr. Otake "did review in detail the pre-sentence report sections dealing with his criminal history to check for errors or misapplication of the guidelines. [Mr. Otake] found no such error, and found Mr. Kealakekua's explanations as to why his criminal history should be reduced to be unsupported by the facts." [Id.] Nevertheless, Mr. Otake objected to Kealakekua's criminal history category. [Id. at ¶ 27.] The Sentencing Memorandum stated:

> the past cases for which Mr. Kealakekua received criminal history points stem from 1988, 1990, and 1993. **These cases are extremely old**, and were non-violent in nature. Mr. Kealakekua objects to the criminal history calculation in the pre-sentence report, and submits that his criminal history category should be lower than V. In particular, paragraph 123 in the pre-sentence report involves the case from 1993. **Mr. Kealakekua does not recall doing any prison time for this offense.** This is corroborated by what is indicated in the pre-sentence report. The presentence report indicates that Mr. Kealakekua was sentenced to 10 years imprisonment on 10/25/2000, however **it also indicates he was released from prison on 10/25/2000, the same day**

**he was sentenced**.  This case should not count as 3
criminal history points.  This would decrease
Mr. Kealakekua's criminal history category to IV
at the highest.

[Sentencing Mem. at 16-17.]  Mr. Otake reiterated these arguments

at the sentencing hearing.  [Sentencing Trans. at 41-42.]  Thus,

Mr. Otake did make many of the arguments that Kealakekua bases

his ineffective assistance of counsel claim upon.

As to the fact that Kealakekua was released on the same

day he was sentenced for Case No. 93-1398-5, AUSA Tong stated

that the probation officer "confirmed that the only reason he was

released on the same day is he was given for credit for time

served, which I think was in excess of 12 months.  And under that

scenario it would be a qualifying conviction that triggers three

points towards the criminal history score."  [Id. at 42.]  This

Court overruled Kealakekua's objections to his criminal history

score and found that his criminal history "should be category 5,

recognizing that many of those convictions are old, but they

still qualify."  [Id.]  Because Mr. Otake raised the foregoing

arguments during the sentencing process, Kealakekua has failed to

establish that Mr. Otake's "representation fell below an

objective standard of reasonableness" as to those issues.  See

Strickland, 466 U.S. at 688.

The only arguments in the § 2255 Motion that Mr. Otake

did not raise in the sentencing proceedings were: Kealakekua did

not serve more than thirteen months' imprisonment for Case

No. 91-B514-5; there is no evidence to support the assignment of
criminal history points for No. 91-B514-5; and Kealakekua was not
on probation for Case No. 93-01398-5 when he committed the
instant offenses.  Even if Mr. Otake had raised these arguments,
they would have been rejected.  First, although a defendant "must
have actually served a period of imprisonment on such sentence"
for the sentence to be considered a "sentence of imprisonment"
for criminal history purposes, "the length of a sentence of
imprisonment is the stated maximum . . . .  That is, criminal
history points are based on the sentence pronounced, not the
length of time actually served."  U.S.S.G. § 4A1.2 cmt. n.2.  The
PSR stated that the stated maximum terms for the counts in Case
No. 91-B514-5 were ten years for Counts 1 to 3, five years for
Counts 4 to 6, and three years for Counts 7 to 14.  [PSR at
¶ 122.]  Thus, even if Kealakekua were correct that he actually
served less than thirteen months of imprisonment for Case No. 91-
B514-5, because his stated maximum was more than thirteen months,
three criminal history points were correctly counted for that
sentence.  See U.S.S.G. § 4A1.1(a) ("Add 3 points for each prior
sentence of imprisonment exceeding one year and one month.").

        Kealakekua's arguments contesting the factual basis for
the inclusion of the sentence in Case No. 91-B514-5 and the
addition of two points because the instant offense was committed
while he was on probation for Case No. 93-01398-5 would also have

been rejected.  The United States Probation Office ("Probation

Office") had sufficient evidence from the records of the two

cases to support those criminal history points.  <u>See</u> Response,

Decl. of Lawrence L. Tong ("Tong Decl.") at ¶ 2 (stating that,

after he received the § 2255 Motion, he "contacted the United

States Probation Office to obtain the records in its files

concerning defendant's prior convictions").  The records of Case

No. 91-B514-5 confirm the sentence for all counts stated in the

PSR.  [Tong Decl., Exh. 2 (records for Case No. 91-B514-5) at 12

(Final Disposition document).[5]]  Because the sentences were to

run concurrently, the stated maximum for that case was ten years,

and three points were correctly attributed for that sentence.

      As to Case No. 93-1398-5, the records the Government

obtained from the Probation Office confirm Kealakekua was

sentenced on October 25, 2000 to ten years of imprisonment, but

was released from custody because he was: given credit for time

served; and allowed to serve the final seven years of the

sentence on probation because he served three years of

imprisonment.  [Tong Decl., Exh. 1 (records for Case No. 93-1398-

5) at 7 (Final Disposition document).]  On August 31, 2004, a

warrant was issued for Kealakekua's arrest because he had not

---

[5] Exhibits 1 and 2 to the Tong Declaration each consist of
multiple documents that are not consecutively paginated.  The
citations to Exhibits 1 and 2 in this order refer to the page
numbers assigned to the exhibits in this district court's
electronic case filing system.

reported to Probation since being released on October 25, 2000 and he changed his residence without obtaining prior permission from his probation officer. [Id. at 12.] A Georgia state court issued an order on June 28, 2006, stating that the running of Kealakekua's term of probation was suspended until Kealakekua "personally report[ed] to the probation supervisor, is taken into custody in this state, or is otherwise available to this Court." [Id. at 11.] Thus, two points were correctly added to Kealakekua's criminal history score because, at the time of the instant offenses, he was still subject to the term of probation for Case No. 93-1398-5.

Moreover, in imposing Kealakekua's sentence, this Court departed from the Guidelines sentencing range because it recognized that his "criminal history may be overrepresented." [Sentencing Trans. at 67.] The Guidelines sentencing range that would have applied to him with an offense level of 24 and a criminal history category of V was 92 to 115 months of imprisonment. [Id. at 63.] However, Kealakekua was sentenced to 84 months of imprisonment, which was "squarely in the middle of" the Guidelines sentencing range for an offense level of 24 and a criminal history category of IV, which was 77 to 96 months. [Id. at 67.] Thus, even if Mr. Otake had raised the three arguments Kealakekua alleges he should have raised and this Court accepted some of those arguments, there is not a reasonable probability

that the sentence would have been lower because the actual sentence imposed already reflected a lower criminal history category.

Kealakekua has therefore failed to establish that his sentence would have been different if Mr. Otake had raised the arguments challenging the points associated with Case No. 91-B514-5 and the points attributed because of the commission of the instant offense while on probation for Case No. 93-1398-5. Because there was no prejudice as a result of the failure to present these arguments, it is not necessary to address whether Mr. Otake's representation was deficient because he did not raise these arguments. <u>See</u> <u>Strickland</u>, 466 U.S. at 697. Kealakekua has failed to establish that Mr. Otake rendered constitutionally ineffective assistance during the sentencing process regarding Kealakekua's criminal history score.

Because Kealakekua has failed to prove any of the alleged instances of ineffective assistance, his § 2255 Motion is denied.

## III. **Certificate of Appealability**

This district court has stated that:

> In dismissing a § 2255 motion, the court must also address whether [defendant/petitioner] should be granted a certificate of appealability ("COA"). <u>See</u> R. 11(a), Rules Governing Section 2255 Proceedings (providing that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant"). A COA may issue only if the

> petitioner "has made a substantial showing of the
> denial of a constitutional right." 28 U.S.C.
> § 2253(c)(2).
>
> "The standard for a certificate of
> appealability is lenient." <u>Hayward v. Marshall</u>,
> 603 F.3d 546, 553 (9th Cir. 2010) (en banc),
> *overruled on other grounds by* <u>Swarthout v. Cooke</u>,
> 562 U.S. 216 (2011). The petitioner is required
> to demonstrate only "that reasonable jurists could
> debate the district court's resolution or that the
> issues are adequate to deserve encouragement to
> proceed further." <u>Id.</u> (citation and internal
> quotation marks omitted). The standard "requires
> something more than the absence of frivolity, but
> something less than a merits determination." <u>Id.</u>
> (internal quotation marks omitted).
>
> The court carefully reviewed [the
> defendant/petitioner's] assertions and gave him
> every benefit by liberally construing them. Based
> on the above analysis the court finds that
> reasonable jurists could not find the court's
> rulings debatable.

<u>Leon v. United States</u>, Civ. No. 15-00099 JMS-BMK, 2015 WL

3965895, at *9-10 (some alterations in <u>Leon</u>). Reasonable jurists

would not find that the rulings in this Order regarding

Kealakekua's § 2255 Motion are debatable. A certificate of

appealability therefore will not be issued.

### CONCLUSION

On the basis of the foregoing, Kealakekua's Motion

under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence

by a Person in Federal Custody, filed December 5, 2016, is HEREBY

DENIED. In addition, this Court DENIES a certificate of

appealability.

In light of these rulings, Kealakekua's Motion for Decision, [filed 8/17/17 (dkt. no. 119),] is HEREBY DENIED AS MOOT.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, January 16, 2018.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**UNITED STATES OF AMERICA VS. JULIAN KEALAKEKUA; CR 14-00374 LEK; ORDER DENYING MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY AND DENYING A CERTIFICATE OF APPEALABILITY**